The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Glenn Roman MOLTRER,
Defendant–Appellant.

No. 93CA0416.

Colorado Court of Appeals,
Div. II.

Aug. 25, 1994.

Rehearing Denied Oct. 13, 1994.

Certiorari Denied May 8, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jonathan A. Abbott, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Law Offices of J.E. Losavio, Jr., J.E. Losavio, Jr., John W. Fresh, Pueblo, for defendant-appellant.

Opinion by Judge METZGER.

· Defendant, Glenn Roman Moltrer, appeals the judgment of conviction entered on a jury verdict finding him guilty of distribution of a Schedule II controlled substance (cocaine). We affirm.

Several police officers from New Mexico and Colorado were engaged in completing an undercover buy of cocaine in Colorado. The plan involved the participation of a civilian informant from New Mexico. The informant was wired with a radio transmitter so police officers could monitor the buy.

The informant accompanied an undercover police officer into a bar operated by defendant. After several hours, the informant asked the officer for $100 to make a purchase. She then accompanied the defendant into a back room.

The officers listening to the transmission then heard a conversation between the informant and a man, whom two officers positively identified as the defendant. The informant purchased two bindles of cocaine, one for herself and one for her boyfriend. She left the bar with the undercover officer and

immediately handed him a small package of cocaine.

After a time, the officers realized that they were "short some cocaine." At their request, the informant then telephoned defendant at his bar and said to him, in effect, "You shorted me, I paid you $100, where's the rest of the stuff?" Defendant replied "I gave you enough, you stuck the other one in your sock, the other package in your sock." A second bindle of cocaine was then discovered in the informant's sock.

The charge and conviction here at issue followed.

## I.

On appeal, defendant first contends that the trial court committed reversible error in holding a hearing, outside the presence of defendant and his attorney, relating to a material witness' appearance. He argues that this proceeding constituted a critical stage of the criminal action and thus implicated his constitutional right to have counsel present. We disagree.

Sections 16–9–101 to 16–9–303, C.R.S. (1986 Repl.Vol. 8A) provide the framework to secure the attendance of out-of-state witnesses at criminal proceedings in this state. *See Kelly v. People*, 121 Colo. 243, 215 P.2d 336 (1950). Upon request of either party, a court in this state may issue a certificate stating that the presence of the witness is necessary and specifying the number of days the witness' presence will be required. This certificate is transmitted to a court of record in the county where the witness is found.

The witness is then summoned to appear before a court in that county. If that court determines that the witness' testimony will be material and that the witness' appearance will not cause undue hardship, the witness is ordered to be present at the time and place indicated in the certificate. The witness is obligated to appear as ordered and, upon appearance, is then tendered funds certain for "each day that he is required to travel and attend as a witness." Section 16–9–203(2), C.R.S. (1993 Cum.Supp.).

■ The right to counsel exists at every critical stage of a criminal proceeding. *Peo-*

*ple v. Roybal,* 618 P.2d 1121 (Colo.1980). As explained in *Key v. People,* 865 P.2d 822, 825 (Colo.1994): "Stages of criminal proceedings have been held to be 'critical' where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair trial."

■ There is no authority mandating the presence of a defendant or defense counsel at a proceeding in which a witness appears to be advised of the time he or she will be needed or required to testify at trial. In our view, the trial court's function at this stage is only ministerial. Therefore, we hold that a bright-line rule mandating the presence of defendant or his counsel at such a proceeding is not warranted.

■ However, defendant argues that, here, the proceedings "took an unexpected turn" because the trial court allowed the witness and her family members to express concerns about their safety. Also, during the hearing, the witness stated that she had no recollection of what had transpired at the bar on the night in question. Given these facts, defendant argues that the trial court was obligated to adjourn the proceeding and to require the presence of defendant and his attorney. We are not persuaded.

In our view, the referenced events did not transform a ministerial proceeding into a critical stage. And, here, defendant's right to a fair trial was not impaired by his absence or that of his counsel at the proceeding.

This witness was endorsed on the information which had been filed on March 30, 1992. Thus, defense counsel could not have been surprised at her appearance to testify. Indeed, when defense counsel learned of the existence of the proceeding he expressed no surprise, nor did he request a transcript, a recess, or a continuance to investigate further.

It is also significant that defense counsel expressed no surprise when the witness testified at trial that she had no memory of the transaction. And, the trial record contains no indication that the witness had ever indi-

cated that she did remember the transaction with defendant.

Under these circumstances, the record gives no indication that defendant was prejudiced by the trial court's manner of conducting the proceeding with the material witness. Consequently, we conclude that the trial court did not err in failing to require the presence of defendant or his attorney at the proceeding.

## II.

Defendant also contends that the trial court erred in denying his motion for new trial based on the court's admission of summaries of the electronically monitored conversations between the informant and defendant pursuant to § 16–10–201, C.R.S. (1986 Repl.Vol. 8A). We find no error.

## A.

In his motion for new trial, defendant argued that the informant had claimed that her consent to electronic monitoring was obtained by coercion. Therefore, he contended, the trial court erred in not holding a hearing, *sua sponte,* concerning that issue at trial.

█ In order to prove voluntariness and consent, it is ordinarily sufficient for the prosecution to show that the informant engaged in the conversation knowing that it was being monitored. However, if there is an allegation of coercion, the prosecution must show that no undue pressure, threats, or improper inducements have been made. *People v. Rivera,* 792 P.2d 786 (Colo.1990).

█ In denying defendant's motion for new trial, the trial court held that it "is not satisfied that the government or law enforcement authorities, either in New Mexico or in Colorado, coerced [the informant] in any way to allow the tape ... the Court does not have any facts to resemble any case which represents lack of consent or reprehension on the part of the officials."

Our review of the record convinces us that these findings were made with ample support. Accordingly, we reject defendant's contention. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## B.

█ Defendant also contended in his motion for new trial that the trial court erred in applying the provisions of § 16–10–201 to allow the summaries of the electronically monitored conversations here. This contention is without merit.

The informant testified at trial that she did not remember anything that had occurred while she was in the bar. Therefore, at the prosecutor's request, the trial court admitted evidence consisting of oral summaries of the conversations between the informant and defendant pursuant to the provisions of § 16–10–201.

That statute provides:

(1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:

(a) The witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and

(b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge.

Defendant, in essence, argues that this statute is not applicable to a situation in which the prior statement consists of a conversation overheard by police. We are unaware of any authority for this proposition.

However, we are guided by *People v. Aldrich,* 849 P.2d 821 (Colo.App.1992). In that case, a division of this court approved the use of the statute in a situation in which a victim's oral statement to a deputy sheriff was admitted after the victim had testified that she did not remember anything. The opinion held that: "The witness, while testifying, must either be given an opportunity to explain or must be available to testify further at the trial, and the statement must relate to

matters within the witness' own knowledge." *People v. Aldrich, supra,* at 826.

Here, the informant was explicitly advised that she could be recalled to testify, and yet she persisted in her testimony that she remembered nothing of the transaction in the bar. The statement, consisting of the conversation between the informant and defendant, purported to be a matter within the informant's own knowledge. And, the informant was available for cross-examination.

These facts are sufficient to warrant the application of § 16–10–201, and we conclude that the trial court did not err in doing so.

### III.

Defendant asserts the trial court erred in admitting the two bindles of cocaine because the chain of custody was not established. We disagree.

■ The admission of evidence is committed to the sound discretion of the trial court. CRE 401, 402, and 403. In general, issues concerning alleged deficiencies in the chain of custody go to the weight rather to the admissibility of the evidence. *People v. Gomez,* 632 P.2d 586 (Colo.1981).

Defendant raised this issue in his motion for new trial, and the trial court denied it, finding that, while there was at one point "a small amount of confusion" concerning the chain of custody, the situation had been remedied and the chain of custody was established.

Our review of the record leads us to the same conclusion. Therefore, we find no abuse of discretion.

### IV.

■ We reject defendant's contention that the evidence was insufficient to support the jury's verdict of guilty and that the trial court erred in denying his motion for judgment of acquittal.

The standard for analysis of this motion was first set out in *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). We agree with the trial court that the relevant evidence here, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt.

### V.

Finally, defendant argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. In a related argument he contends that, at a minimum, the trial court should have conducted a hearing concerning an anonymous letter the court had received from a person purporting to have served on the jury in defendant's trial. We find no error.

■ If allegations are made concerning a juror's misconduct, the preliminary decision to conduct a hearing and the final decision concerning the merits of the allegations lie within the discretion of the trial court. *People v. Garcia,* 752 P.2d 570 (Colo.1988).

■ The letter here was sent to defense counsel after the trial, and read as follows:

I am writing this letter concerning your client on the drug case on Oct. 27 & 28. I was on the jury that day. After concidering [sic] the case more, I feel that we have done a terrible thing by finding your client guilty. This has been on my mind since I have had time to realy [sic] look at it. I hope you cando [sic] something about it because I think he is inocent [sic] of this charge. I dont [sic] know who to talk to on this matter because I do not want to get in trouble with the court. Hopefully you will know how to do this. A concerned juror.

The trial court noted that the letter contained no identification and therefore, could have been fabricated. In any event, the court concluded: "Under no stretch of the imagination does that letter amount to any form of misconduct on the part of any person."

This ruling does not constitute an abuse of discretion, nor does the trial court's refusal to hold a hearing amount to such an abuse. The text of the letter is simply insufficient to

raise the issue defendant asserts. *See People v. Garcia, supra.*

The judgment is affirmed.

KAPELKE, J., concurs.

JONES, J., dissents.

Judge JONES dissenting.

I respectfully dissent.

Defendant contends that the trial court erred in conducting a hearing, outside the presence of the defendant and his attorney, relating to the trial appearance of a material witness. He argues that, under the circumstances, this proceeding constituted a critical stage of the entire criminal proceeding mandating his constitutional right to have counsel present.

I agree that the content of the exchange during the proceeding required that defendant's counsel be present. I further conclude that, under the circumstances of this case, the error here was not harmless.

The right to counsel exists at every critical stage of a criminal proceeding, which is defined as any point at which there exists more than a minimal risk that the absence of the defendant's counsel might impair the defendant's right to a fair trial. *Key v. People,* 865 P.2d 822 (Colo.1991). *See People v. Johnson,* 802 P.2d 1105 (Colo.App.1990), *rev'd on other grounds,* 815 P.2d 427 (Colo. 1991).

In *Key,* the court found that a court's impromptu *ex parte* conference with the jury during its deliberations may constitute a critical stage of the proceedings even when the discussions are purportedly confined to scheduling matters because the content of the communications and the context in which they occur may create more than a minimal risk that counsel's absence would impair the defendant's right to a fair trial. The court noted that the content of such a proceeding could be affected "because of the ever-present risk that the discussions may take an unexpected turn." *Key v. People, supra,* at 825.

Here, as in *Key,* the proceeding in question was intended to serve a merely administra-

tive function. It was related to a material witness certification procedure undertaken pursuant to § 16–9–203, C.R.S. (1993 Cum. Supp.), which is normally not a critical stage. The witness-informant, who was a resident of New Mexico, had been summoned to Colorado to appear before the trial court, which was to advise her of the time she was to appear in court the next day to testify.

The trial court initiated the proceeding by inquiring whether the defendant was present. After the court was informed that the defendant and his attorney were not present, the prosecutor stated that: "All that I would respectfully request of the court is that in fact for the convenience of [the informant] we determine a time certain for her to appear tomorrow."

The court then asked the informant if she had a statement that she wanted to make. The informant replied that she had "a big statement to make" and thereafter recited a myriad of objections to having to testify at the trial, including the fact that, because of her ingestion of drugs and alcohol, she could not remember anything at all from the evening when the cocaine transaction had occurred. The informant's husband and brother-in-law, who were also present at the proceeding, expressed concerns that the informant's children might need protection, and the brother-in-law additionally indicated that police officers had failed to keep promises made to the informant in the past.

As a result of the trial court's inquiry of the informant, this purportedly administrative proceeding took "an unexpected turn," so that the context in which this exchange occurred was in the nature of a hearing. *See Key v. People, supra.* In addition, the content of the exchange involved statements by the informant that could have been used by the prosecution to determine the admission of evidence during trial, while the defendant and his counsel did not have the benefit of this information. Hence, the content and context of the exchange created more than a minimal risk that counsel's absence would impair the defendant's right to a fair trial. *See Key v. People, supra. Cf. People v. Johnson, supra.*

Consequently, I conclude that, under these circumstances, the manner in which the proceeding was conducted constituted error, depriving the defendant of his constitutional right to counsel at a critical stage of the proceedings.

Although the error here was of a constitutional nature, a harmless error analysis may be applied if the error was not a structural defect affecting the framework within which the trial proceeds, but was instead simply an error in the trial process itself. Harmless error analysis has been applied when "trial error" has deprived the defendant of his right to counsel during a discrete stage of the proceedings, the impact of which can be quantitatively assessed on appellate review. *Key v. People, supra.*

In cases of trial error involving the right to counsel, reversal is required unless the appellate court can declare that the error was harmless beyond a reasonable doubt. Under this standard, the prosecution has the burden of demonstrating that the proceeding in error did not contribute to the defendant's conviction. If there is a reasonable possibility from a review of the entire record that the defendant could have been prejudiced, the error cannot be harmless. *Key v. People, supra.*

Here, a review of the entire record reveals that, because of her inability to remember any of the incidents that occurred that evening, none of the evidence elicited to support the charges against defendant was adduced through the informant. Rather, all of the evidence introduced at trial was of a circumstantial nature and was introduced through the testimony of police officers who had overheard electronically transmitted conversational exchanges between a man they identified as defendant and the informant. The prosecution became aware that its evidence would have to be presented in this way at the hearing in question, but the defense could not have known of it until the trial was underway.

Knowledge of the informant's inability to recall any of the events upon which the charges against defendant were based was critical to the defense in preparing for trial. The significance of this information revealed at the proceeding militates against defendant's absence being considered harmless because it was available to the prosecution when the proceeding took "an unexpected turn," but was not made available at that time to the defendant or his counsel.

In addition, some of the statements that were made in the course of the proceeding also suggest that certain promises had been made to the informant by police officers which were not fulfilled and that the informant had cooperated with the police because she was under the influence of drugs and alcohol and in fear for her children. These statements might have alerted the defendant and his counsel to a defense concerning coerced cooperation by the informant that defendant ultimately was not able to raise until filing his amended motion for new trial.

In fact, evidence was elicited at trial that the informant had cooperated with police because she was afraid that, if she did not cooperate, they would take her children away from her and that she "would do anything" to keep her children. Defendant cited this evidence in an amended motion for new trial as grounds for his allegation that the informant had not lawfully consented to the illegal monitoring and that, therefore, any evidence derived from such monitoring is inadmissible. *See People v. Rivera,* 792 P.2d 786 (Colo. 1990).

Based upon my review of the entire record, I cannot declare that the error here was harmless beyond a reasonable doubt. Instead, under the circumstances, I conclude that the defendant was prejudiced by his absence and that of his counsel from the proceeding the day before trial.

It is significant to me that the court failed to notify the defendant and his attorney that, instead of being a run-of-the-mill proceeding concerning timing of the witness' testimony, it became a hearing during which the prosecution, but not the defense, learned that the prosecution's key witness had become, in essence, a hostile witness. Thus, the analysis of the majority opinion concerning the material witness proceeding as a *normally* noncritical stage of the entire proceeding does not take into account the factors that can

cause an ordinarily non-critical proceeding to become "critical," as the court observed in *Key*.

Accordingly, I would reverse the judgment of conviction and remand to the trial court for a new trial. Upon remand, in light of the defendant's lack of notice during the pretrial proceeding, if the defendant were to raise the issue of whether the informant chose voluntarily to participate in electronic monitoring, or the related issue of alleged coercion to induce that participation, I would direct the court to conduct a hearing and enter findings on these issues.